U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL - 2 2010

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOHN JEFFERSON, JR.,           §
                               §
            Plaintiff,         §
                               §
VS.                            §   NO. 4:09-CV-363-A
                               §
MILLERCOORS, LLC,              §
                               §
            Defendant.         §

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant,

MillerCoors, LLC, for summary judgment as to all claims and

causes of action brought against it by plaintiff, John Jefferson,

Jr.  Having considered the motion and all of the parties'

filings, as well as the summary judgment record and applicable

legal authorities, the court concludes that the motion should be

granted.[1]

I.

Plaintiff's Claims

Plaintiff initiated this action by filing a complaint June

15, 2009, asserting claims against defendant for discrimination

---

[1] Plaintiff also filed a motion to strike defendant's second supplemental appendix and supporting brief submitted with defendant's reply. The court notes that a portion of the supplemental appendix to which plaintiff objects consists of exhibits from plaintiff's deposition, submitted by plaintiff in his own appendix in response to defendant's motion. Rather than rule on the motion to strike, the court will give the supplemental evidence whatever weight and consideration it deserves.

in violation of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, et seq., for age discrimination pursuant to the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

("ADEA"), and discrimination on the basis of race pursuant to

Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000e et seq.

II.

## The Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment

because plaintiff is unable to establish a _prima facie_ case of

discrimination as to any of his claims, and because he is unable

to show that defendant's legitimate, non-discriminatory reasons

for its actions are a pretext for unlawful discrimination.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment

record:

Defendant is a brewery that operates around the clock,

divided into three shifts:  first shift, 7:00 a.m. to 3:00 p.m.;

second shift, 3:00 p.m. to 11:00 p.m.; and third shift, 11:00

p.m. to 7:00 a.m.[2] Defendant's operations are divided into various departments, including Brewing, Packaging, Shipping, Maintenance, and Technical Services. Although employees are assigned to a department, they are not assigned to particular positions within that department. Instead, each employee within a given department is expected to be able to perform a set of job functions within that department. At some point defendant implemented a policy known as World Class Manufacturing, which changed the way employees performed their jobs and required employees to be able to perform more than one job.

The Shipping department includes ten functions: remote warehouse, MCS,[3] dispatch office, wood feed, wood sort, can utility, keg loader, forklift driver, restack, and rail. Most employees in Shipping are required to drive a forklift; the only Shipping function not requiring the use of a forklift is dispatch, which involves the use of a computer.

One employee per shift is typically assigned to perform the can utility function. That function requires the employee to use

---

[2]Defendant is a joint venture formed by Miller Brewing Company and Molson Coors Brewing Company that began operating as a joint venture on July 1, 2008. Prior to formation of the joint venture, the entity that employed plaintiff was Miller Brewing Company.

[3]Although it is unclear from the record exactly what "MCS" entails, it is immaterial to resolution of the summary judgment motion.

"lift equipment to manually feed or remove pallets from can lines, remove dunnage (slip sheets, top frames, and empty pallets) from the depalletizers, and then dispos[e] of them." Def.'s App. at 122.  On second and third shift, can utility duties include "supplying pallets for the palletizers."  Id.  As fewer employees work on the second and third shift, and as those employees must haul larger loads of materials, employees on those shifts must operate both single and doublewide forklifts.  In contrast, employees on first shift are not required to operate doublewide forklifts.  Although operating any forklift requires the employee to turn and look behind him while driving in reverse, operating the doublewide requires the driver to look behind him more often and for longer periods of time.

The International Brotherhood of Teamsters, Local 997 ("Union") represents the bargaining unit personnel, including plaintiff.  The collective bargaining agreement between defendant and the Union controls the terms and conditions of employment for the bargaining unit.

Plaintiff is a black male[4] who has been employed by defendant since February 2, 1976, where he has also been a Union

---

[4]Plaintiff identifies himself as a black man, rather than as African-American.

member throughout his employment. Since at least 1998, plaintiff has worked on the third shift by his own choice. Although plaintiff has performed a variety of job functions with defendant, since at least 1998 he has worked can utility on the third shift, which, as discussed, requires an employee to operate a forklift throughout most of the shift.

On June 8, 2005, plaintiff was involved in an on-the-job accident in which he sustained injuries to his back, resulting in his absence from work for four months. Plaintiff received treatment for his workplace injuries from a chiropractor, Walter J. Mellgren, Jr. ("Mellgren"). When plaintiff returned to work in October 2005, he was restricted to can utility duties, but was no longer able to operate a doublewide forklift.

Mellgren continued to provide treatment for plaintiff, and he provided defendant with periodic updated Texas Workers' Compensation Work Status Reports ("Work Status Report"). On November 17, 2006, Mellgren supplied defendant with a Work Status Report that stated plaintiff's work restrictions were "permanent" and indicated that plaintiff's November 17, 2006, visit would be the last one scheduled to treat his injuries. The permanent restrictions included: maximum of eight hours work per day, one sit/stretch break per hour, no lifting/carrying objects of more

than ten pounds for more than eight hours per day, and an instruction "not to drive double width forklift" but to continue can utility duties only. Def.'s App. at 117, 127.

In December 2006, defendant transferred nine positions, including can utility, from Shipping to Packaging. Consequently, plaintiff also moved to Packaging and continued to perform the can utility function.

In May 2007, defendant hired a new safety director, Jack Moss. Moss recommended, and defendant's management collectively agreed, that employees with permanent restrictions be required to provide updated information concerning those restrictions; those employees who failed to provide the required documentation would be returned to full duty. One of defendant's objectives in requiring the updated restrictions was to learn from each employee's physician the specific physical activities the employee could or could not perform, rather than have the physician provide limitations as to specific jobs.

On August 13, 2007, Wanda Estrada ("Estrada"), defendant's Health Services Manager, sent letters to each of defendant's approximately forty employees with permanent restrictions, including plaintiff, informing them that they were required to provide updated work restrictions within five days. On August

6

29, 2007, defendant sent follow-up letters to those employees, including plaintiff, who failed to comply with the first letter. The letter explained that if the employee failed to provide the updated Work Status Report by September 7, 2007, defendant would assume that restrictions were no longer necessary.  On September 20, 2007, defendant mailed a third letter to those employees, including plaintiff, who had still not complied with the first two letters, informing the employee that defendant interpreted the lack of response to the second letter to mean restrictions were no longer required.  Plaintiff failed to respond to any of the letters.  No other employee failed to provide updated restrictions.

Sometime in September 2007, defendant changed its workers' compensation insurance carrier to Coventry Health Care ("Coventry").  Prior to this change, employees were permitted to use chiropractors as their treating physicians.  However, Coventry required that medical doctors perform medical assessments.  Plaintiff acknowledged in writing that he received information about defendant's workers' compensation program and the requirement to choose a treating doctor from the list of network doctors.

In April 2008, an arbitrator determined that defendant had violated the terms of the collective bargaining agreement by transferring certain functions, including can utility, from Shipping to Packaging, and ordered those jobs returned to Shipping.  Defendant complied, and around June 2008, moved those functions back to Shipping.  Plaintiff also returned to Shipping and continued to perform the can utility function.  Around this time, defendant modified the duties of can utility to require employees on the second and third shifts to operate both single and doublewide forklifts.

In early June 2008, Estrada spoke again with plaintiff regarding the need to provide updated work restrictions.  On June 11, 2008, two union representatives met with Estrada regarding plaintiff's work restrictions.  Also on or around June 11, 2008, Estrada discovered what she considered to be a full work release. Estrada informed plaintiff that defendant had a full duty release and if he still had restrictions, he would have to select a physician, other than his chiropractor, from the workers' compensation provider list and provide updated restrictions.

On July 3, 2008, plaintiff submitted a document titled "Essential Functions--Restrictions Form," purportedly listing work restrictions assigned by Brett Bolte, M.D. ("Bolte").  Pl's

App. at 53.   After reviewing plaintiff's documentation, defendant

determined that it was inadequate because:   Bolte was not a

network physician; Bolte had not used a proper Work Status Report

form required by Texas law and by defendant; the document

restricted plaintiff from performing certain job duties instead

of only identifying physical limitations; and some of the lifting

limitations had been visibly altered from "10 lbs" to "20 lbs."

Def.'s App. at 103, 118.   Estrada reminded plaintiff that

defendant required a physician to provide restrictions only as to

physical limitations, rather than specific job-based

restrictions.

Plaintiff then provided a note dated August 12, 2008, from

Mellgren.   This note stated that plaintiff's restrictions had not

changed and "remain[ed] permanent."   Def.'s App. at 119, 132.

Estrada again informed plaintiff that Mellgren's note was

insufficient, and that plaintiff needed to provide a new Work

Status Report from an in-network physician.

On August 19, 2008, Estrada telephoned Mellgren and informed

him that defendant did not accept job-based restrictions, but

required a description of physical limitations.   Estrada then

faxed to Mellgren a Work Status Report form.   In the "comments"

section of the fax coversheet, Estrada wrote:

> Per our conversation this morning, please sign the
> attached DWC73 [Work Status Report] stating that the
> employee has the following permanent restrictions:
> 2 hrs standing walking sitting bending stooping
> May not push pull more than 10 lbs.
> Minimal twisting
> Max hours work per day 8
> Must take a sit/stretch break 1 time every hours [sic]
> Once you've signed this form please fax it back to
> me [].

Def.'s App. at 133. Mellgren faxed back the fax cover page, on

which he had added "as tolerated" to the restrictions of "2 hrs

standing walking sitting bending stooping" and to the "max 8

hours work per day." Id. Mellgren wrote that "all previous

restrictions that are permanent still remain the same," added an

illegible entry next to the limit on stretch breaks, and added:

"[a]s per our conversation on 08-19-08 the job that [plaintiff]

is presently performing has been eliminated-discontinue [sic] for

and in your company." Id. On the Work Status Report form

Mellgren added the restriction of 40 sit/stretch breaks per hour.

Id. at 105.[5]

    Considering the fax cover sheet and Work Status Report

provided by Mellgren, defendant interpreted plaintiff's work

---

[5]On September 11, 2008, after defendant had instructed plaintiff not to return to work, Mellgren faxed the same cover sheet to defendant with the additional notation: "Patient may work an eight hour day with previous and present permanent restrictions." Def.'s App. at 104.

restrictions to include:  a maximum of two hours per day

standing, walking, sitting, bending, or stooping as tolerated; a

limit of pushing, pulling, lifting, or carrying objects of no

more than 10 pounds; minimal twisting as tolerated; a maximum of

eight hours of work per day; and one sit/stretch break once every

hour.

On August 22, 2008, Estrada and Letha Sloan ("Sloan"),

defendant's Senior Employee Relations Manager, telephoned

plaintiff at home.  Sloan and Estrada left a message with

plaintiff's wife that plaintiff was not to return to work,

although the parties dispute the exact content of the

conversation.  Plaintiff later called and spoke to Sloan, who

directed him to see an in-network physician selected from the

list previously provided to him.

Plaintiff remains an employee of defendant, although he is

inactive.

IV.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part

of a claim as to which there is no genuine issue of material fact

and as to which the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,

11

Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial.  Anderson, 477 U.S. at 248, 256.  To meet this burden, the nonmovant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported

allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A. Evidentiary Framework

To evaluate claims of discrimination under Title VII, the ADEA, or the ADA, absent direct evidence, the court looks to the evidentiary burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003). See also McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 279 (5th Cir. 2000) (ADA); Evans v. City of Houston, 246 F.3d 344, 349 (5th Cir. 2001) (Title VII and ADEA). This framework, in turn, requires plaintiff first to make out a prima facie case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

If plaintiff makes out a prima facie case, a presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. Id. at 506-07; McInnis, 207 F.3d at 279-80. If defendant meets this burden of production, the plaintiff bears the ultimate burden of proving that the employer's proffered

13

reason is not true but instead is a pretext for intentional discrimination. Hicks, 509 U.S. at 507.

As plaintiff has offered no direct evidence of discrimination,[6] he must establish a prima facie case of discrimination. A prima facie case of discrimination on the basis of disability requires a plaintiff to establish that he (1) is disabled; (2) is qualified for the position at issue; and (3) was subjected to an adverse employment action on account of his disability. Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007).

The second and third elements of a prima facie case of discrimination on the basis of race or age are the same as that for disability, and additionally require a showing that the plaintiff is a member of a protected class and, for race, that others similarly situated were treated more favorably, or for age, that he was i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discriminated against because of age. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010) (age); Okoye

---

[6]Defendant argues that statements alleged to have been made by certain of defendant's employees are not direct evidence of discrimination, but instead are merely "stray remarks." Def.'s Br. in Supp. of Mot. for Summ. J. at 23, 38. Although the court is inclined to agree with defendant, it need not reach the issue, as plaintiff has waived this point by failing to address it in his response. Keelan v. Majesco Software, Inc., 407 F.3d 332, 339-40 (5th Cir. 2005).

14

v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512 (5th
Cir. 2001) (race).

B.   No Evidence of Pretext

Defendant argues that plaintiff is unable to establish a
prima facie case as to any of his claims, but even if he has done
so, he has failed to offer competent summary judgment evidence to
show that defendant's legitimate, non-discriminatory reason for
his adverse employment action was a pretext for unlawful
discrimination.   Although the court is inclined to agree that
plaintiff has failed to establish a prima facie case of
discrimination as to any of his claims, the court need not
resolve that issue, as it is clear that plaintiff has adduced no
summary judgment evidence of pretext.

Defendant's burden with regard to establishing a non-
discriminatory reason for its actions is one of production; thus,
"[i]f the employer produces any evidence 'which, taken as true,
would permit the conclusion that there was a nondiscriminatory
reason for the adverse action,' then the employer has satisfied
its burden."   Daigle v. Liberty Life Ins. Co., 70 F.3d 394, 396
(5th Cir. 1995) (citing St. Mary's Honor Ctr. v. Hicks, 409 U.S.
502, 507 (1993)).   Defendant maintains that it directed plaintiff
not to report to work after August 22, 2008, because he failed to

15

provide defendant with an updated Work Status Report from an in-network medical doctor as defendant requested in August 2007, and the most recent limitations on file for plaintiff included a limitation of two hours of sitting and standing, rendering plaintiff unable to perform any job.  As the burden to produce a legitimate, non-discriminatory reason is a light one, defendant has satisfied its burden.

The burden shifts to plaintiff to show that there is a genuine issue of material fact as to pretext, which he can accomplish "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence."  Jackson, 602 F.3d at 378-79 (internal citations and quotation marks omitted).

In the response, plaintiff states that "[i]t appears from the evidence available to Plaintiff that Defendant has adopted a 'zero tolerance' position, and is not accommodating any permanent work restrictions," citing as evidence the affidavits of plaintiff, Jerry Cook ("Cook"), and Susan Gutierrez ("Gutierrez").  Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Br.") at 8.  Gutierrez states that she believes defendant "is implementing a policy to deny employment to anyone who suffers work restrictions or is otherwise disabled from

16

performing any kind of work." Pl.'s App. at 61. Gutierrez bases this statement on her experience with defendant in May 2010 denying her continued accommodation for an injury it had previously accommodated since January 2010.

Cook states that "from [his] experience and work at [defendant], [he] believe[s] that [defendant] could have accommodated [plaintiff's] restrictions which prohibited him from driving a doublewide forklift, but because of Willey Harvey's 'zero tolerance' attitude concerning disabilities and restrictions, he chose not to accommodate [plaintiff's] injuries." Id. at 46. Plaintiff's affidavit states "I believe [defendant] is implementing a policy to deny employment to anyone who suffers work restrictions or is otherwise disabled from performing any kind of work." Id. at 2.

To the extent plaintiff attempts to rely on these affidavits to establish pretext as to his disability discrimination claim, any such attempt fails. Rule 56(e) of the Federal Rules of Civil Procedure requires that an affidavit supporting or opposing summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Unsubstantiated and subjective beliefs, summary assertions and

17

conclusory allegations, and opinions of fact or hearsay

statements are not competent summary judgment evidence.  See

First Colony Life Ins. Co. v. Sanford, 555 F.3d 177, 181 (5th

Cir. 2009); Lechuga v. S. Pac. Transp. Co., 949 F.2d 790, 798

(5th Cir. 1992); Forsyth, 19 F.3d at 1533.  None of the

affidavits relied on by plaintiff contain facts showing that the

affiant is doing anything more than stating a belief or opinion.

Statements such as those of Cook, Gutierrez, and plaintiff, based

on the individual's opinion, belief, or on hearsay, are

insufficient to create an issue of fact as to pretext.

Although not clearly stated in the response, it appears

plaintiff may be attempting to argue pretext as to age

discrimination based on the following factual allegations in the

response: of the forty of defendant's employees who had work

restrictions in 2007, plaintiff claims ten were laid off or

placed on involuntary leave on and after June 2008 due to

defendant's alleged refusal to accommodate their restrictions;

all of the laid-off employees were over forty years of age; and

eight of them were over sixty.  Plaintiff contends these

allegations "create[] a genuine issue of material fact concerning

disparate treatment" under the ADEA.  Pl.'s Br. at 16.  If

plaintiff intended these facts to show pretext, he misses the

mark.  "The issue at the pretext stage is whether [defendant's] reason, even if incorrect, was the real reason" for defendant's adverse action against plaintiff.  Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002).  Contrary to plaintiff's contention, these assertions fail to raise a question as to whether defendant's stated reason for its action against plaintiff was or was not the real reason.

Raw numbers or statistics such as those presented by plaintiff, devoid of context, are insufficient to prove pretext absent additional evidence of pretext.  See, e.g., Walther v. Lone Star Gas Co., 977 F.2d 161, 162 (5th Cir. 1992) (per curiam) (proving pretext by statistics alone is a "challenging endeavor"); Joseph v. City of Dallas, 277 F. App'x 436 (5th Cir. 2008) (raw numbers without application to particular individual or circumstances insufficient to establish pretext).  "The probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination."  EEOC v. Tex. Instruments Inc., 100 F.3d 1173, 1185 (5th Cir. 1996).  Plaintiff has offered nothing to show the probative value of the raw numbers he cites or how they may be evidence of discriminatory intent against him.

19

Plaintiff has also failed to direct the court to evidence of any similarly situated employee--one under the age of forty who failed to comply with defendant's request to supply updated work restrictions--who was treated more favorably than plaintiff by being allowed to remain on the job. Berquist v. Washington Mut. Bank, 500 F.3d 344, 353-54 (5th Cir. 2007) (plaintiff must show similarly situated employees were treated differently to prove disparate treatment); Little v. Republic Ref. Co., 924 F.2d 93, 96-97 (5th Cir. 1991) (same). Plaintiff has failed to adduce any evidence that defendant's reasons for its actions as to plaintiff are a pretext for discrimination on the basis of age.

Finally, plaintiff has failed to provide the court any evidence that defendant's reasons are a pretext for discrimination based on race. Plaintiff relies generally on his own affidavit and those of Michelle Graham and Horace Johnson, claiming these affidavits "create a genuine issue of material fact of actual discriminatory intent and less favorable treatment." Pl.'s Br. at 17. Plaintiff, as the nonmovant, must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [his] claim[s]." Forsyth, 19 F.3d at 1537 (internal citations omitted). Plaintiff does not direct the court to the specific

20

portions of the referenced affidavits that he contends prove

defendant's reasons for its actions are not worthy of credence or

that show he was treated differently from any similarly situated

person outside the protected class.[7]

Plaintiff obviously disagrees with defendant's decision not

to allow him to return to work. The ultimate question for the

court, however, "is not whether an employer made an erroneous

decision; it is whether the decision was made with discriminatory

motive." Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091

(5th Cir. 1995). "[A]n employee's subjective belief that he

suffered an adverse employment action as a result of

discrimination, without more, is not enough to survive a summary

judgment motion," in the face of an adequate nondiscriminatory

reason. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415,

1430 (5th Cir. 1996) (internal citations omitted). Here, the

court finds nothing in the summary judgment record to show that

defendant's actions were a pretext for unlawful discrimination.

---

[7]The court has reviewed the affidavits referred to by plaintiff and concludes that they primarily contain inadmissible opinions, hearsay, and conclusory assertions, and are probative of nothing pertaining to the question of whether defendant intentionally discriminated against plaintiff by requiring him to submit updated work restrictions from an in-network physician.

VI.

## Plaintiff's Motion for Continuance

Subsequent to filing his response to defendant's motion for summary judgment, plaintiff also filed a motion for continuance pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. To prevail on such a motion plaintiff must "specifically explain both why [he] is currently unable to present evidence creating a genuine issue of fact and how a continuance would enable [him] to present such evidence." Access Telecom, Inc. v. MCI Telecomm. Corp., 197 F.3d 694, 719 (5th Cir. 1999) (internal citations omitted). In seeking a continuance a party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment." Id. at 720.

Plaintiff has failed to make the required showing. Although he contends that defendant has withheld certain documents and identifies certain individuals who he would like to see testify at trial, plaintiff fails to identify how he expects the allegedly withheld documents and witnesses would create a genuine issue of fact sufficient to defeat summary judgment.

Plaintiff also fails to adequately demonstrate that he used due diligence to obtain the documents or witnesses from defendant

22

during the discovery period.  Baker v. Am. Airlines, Inc., 430 F.3d 750, 756 (5th Cir. 2005).  Although plaintiff contends that defendant failed to produce certain witnesses for depositions and has withheld, or not fully produced, responsive documents, the record contains no evidence of any attempts by plaintiff during the course of litigation to remedy defendant's alleged dilatory conduct, such as by filing a motion to compel.

Plaintiff also complains of defendant's failure to produce its response to the EEOC prior to May 5, 2010.  Absent from the motion is anything directing the court to a request by plaintiff to produce the document prior to that date, nor is there an explanation of why the court should delay ruling on the summary judgment motion because defendant failed to produce an unrequested document that plaintiff could have easily obtained himself from the EEOC.

Although the motion and affidavit of plaintiff's counsel attempt to paint defendant as obstructing plaintiff's efforts to engage in discovery, the court concludes that plaintiff is solely responsible for any delays in receiving requested documents prior to the time defendant submitted its motion for summary judgment. For example, counsel's affidavit states that she served "comprehensive" requests for production on defendant's counsel in

23

September 2009, then two paragraphs later states that defendant
did not produce a certain chart of employee names until May 5,
2010.  However, a review of the requests and defendant's
responses attached to the motion for continuance demonstrate that
plaintiff did not ask for the information contained in the chart
in the September 2009 requests for production.  The court finds
such a request, however, in interrogatories plaintiff apparently
served in late spring 2010, to which defendant responded on June
14, 2010, and which are included in plaintiff's appendix in
opposition to defendant's motion for summary judgment.  Defendant
can hardly be accused of dilatory conduct for producing in June
what was apparently only requested in May.

     Finally, the court finds the statement in counsel's
affidavit, that "I do not believe the Plaintiff was given a
reasonable opportunity to conduct discovery prior to submission
of evidence in opposition to Defendant's motion for summary
judgment," to be lacking in candor, at best.  The court's
scheduling order in this case, signed August 7, 2009, required
all discovery to be completed by June 14, 2010--a period of ten
months.  Plaintiff was afforded the same opportunity as defendant
to conduct discovery.  If plaintiff sincerely believed he needed
additional time for discovery, he had ample opportunity to raise

                                24

the issue prior to his June 21, 2010, motion for continuance. Accordingly, the court concludes that plaintiff's motion should be denied.

### VII.

### Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action asserted by plaintiff, John Jefferson, Jr., against defendant, MillerCoors, LLC, be, and are hereby, dismissed with prejudice.

The court further ORDERS that plaintiff's motion for continuance be, and is hereby, denied.

SIGNED July 2, 2010.

_____
JOHN McBRYDE
United States District Judge